The STATE of Ohio, Appellee,

v.

BURDINE–JUSTICE, Appellant.

[Cite as *State v. Burdine–Justice* (1998), 125 Ohio App.3d 707.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA97–05–052.

Decided March 30, 1998.

708

*Donald W. White,* Clermont County Prosecuting Attorney, and *David Henry Hoffmann,* Assistant Prosecuting Attorney, for appellee.

*R. Daniel Hannon,* Clermont County Public Defender, and *Joy M. Albi,* Assistant Public Defender, for appellant.

PowELL, Judge.

Defendant-appellant, Carolyn Burdine–Justice, appeals a decision by the Clermont County Municipal Court. The court found appellant guilty of child endangering, a violation of R.C. 2919.22(B)(1). We affirm the trial court's decision.

Appellant allegedly endangered her daughter sometime in early October 1996. Appellant's daughter, born on November 16, 1993, was two years old at the time

of the alleged incident. Appellant's father, Wayne Justice, testified that on or about October 4, 1996, while he and his wife were baby-sitting the child, they noticed bruising around and just above the child's buttocks. Justice notified the police, who began an investigation. As part of their investigation, police took photographs of the child's bruises.

Sometime in February 1997, Officer Sue Madsen interviewed appellant. Madsen testified that she showed appellant the photographs and that appellant told Madsen that she didn't know how the child received the bruises. Madsen stated that appellant guessed that the child may have received the bruises while playing and sliding down the stairs in her apartment. She further testified:

"I continued to ask her, 'Carolyn, who has done this to your child?' And she kept looking at the pictures and looking at the pictures and at that time, she broke down, and she was crying, and she stated that 'I must have done this. I didn't realize I hit her so hard.' "

Appellant testified that the day before the child went to Justice's home, the child got into some perfume. Appellant claimed that because of the child's actions, appellant "tapped her on the butt" twice with her hand.

On February 28, 1997, a complaint was filed claiming that appellant cruelly abused her child by administering physical punishment that was excessive under the circumstances, creating a risk of physical harm to the child. The numerical designation of the charge on the complaint was "R.C. 2919.22(B)." Appellant's trial was held on April 24, 1997. The prosecution attempted to proceed against appellant claiming that she had violated R.C. 2919.22(A). The court advised the prosecution that it might not be able to proceed with a charge under R.C. 2919.22(A). Thereafter, the prosecution moved to amend the complaint by charging appellant with a violation of R.C. 2919.22(B)(1). The court granted the prosecution's motion to amend the complaint. After hearing the evidence, the trial court found appellant guilty of violating R.C. 2919.22(B)(1). Appellant appeals this decision and presents three assignments of error.

### Assignment of Error No. 1:

"The trial court erred to the substantial prejudice of Ms. Burdine by allowing the state to amend the complaint and allege a violation of R.C. 2919.22(B)(1) instead of a violation of R.C. 2919.22(B)(3)."

Appellant argues that the complaint was improperly amended, allowing appellant to be charged with a violation of R.C. 2919.22(B)(1). Appellant also argues that the legislature intended to establish a distinct offense involving corporal punishment with enactment of R.C. 2919.22(B)(3) and that the court created its own moral code that disallows corporal punishment.

"It is well established that a charging instrument, including a complaint, is sufficient if it tracks the language of the statute." *State v. McNeese* (Oct. 23, 1995), Warren App. No. CA93–12–108, unreported, at 8–9, 1995 WL 617589, following *State v. Marcinski* (1921), 103 Ohio St. 613, 618, 134 N.E. 438, 439. A charging instrument does not need to be in the exact language of the statute so long as all the essential elements are contained in language equivalent to that used in the statute. *McNeese* at 10, following *State v. Oliver* (1972), 32 Ohio St.2d 109, 111, 61 O.O.2d 371, 372–373, 290 N.E.2d 828, 829–830.

In the present case, appellant was convicted of violating R.C. 2919.22(B)(1). R.C. 2919.22(B) states:

"No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

"(1) Abuse the child."

When the trial court amended the complaint, it stated:

"I will, at the State's request then, amend the complaint to set forth then that language which is required to charge a violation of Ohio Revised Code Section 2919.22(B)(1). Specifically, it will state that the Defendant did, to a child under eighteen years of age or, a mentally or physically handicapped child under twenty-one years of age, abuse such child."

A review of the trial court's statement shows that the language of the amended complaint closely follows the language of R.C. 2919.22(B)(1). Therefore, the amended complaint was sufficient to charge appellant with a violation of R.C. 2919.22(B)(1).

The next question we must address is whether the trial court properly amended the original complaint. A trial court may not amend a criminal complaint if the amendment changes the name or the identity of the crime charged. *Akron v. Jaramillo* (1994), 97 Ohio App.3d 51, 53, 646 N.E.2d 212, 213–214; Crim.R. 7(D). Under Crim.R. 7(D), the original indictment can be amended during trial if the amended charge is a lesser included offense of the original charge. *State v. Briscoe* (1992), 84 Ohio App.3d 569, 572, 617 N.E.2d 747, 749.

In the present case, the original complaint stated that appellant did "cruelly abuse Tea Burdine, administer physical punishment to Tea Burdine which discipline was excessive under the circumstances and created a risk of physical harm to her. Tea Burdine being a child under the age of 18 years of age, contrary to and in violation of Section 2919.22(B) of the Revised Code of Ohio, a misdemeanor of the first degree."

Although the original complaint misstated the degree of the offense as being a misdemeanor of the first degree,[1] it contained elements of both R.C. 2919.22(B)(2) and (3):

"No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

"* * *

"(2) Torture or cruelly abuse the child;

"(3) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child." R.C. 2919.22(B).

A comparison of R.C. 2919.22(B)(1) and (2) shows that (B)(1) is a lesser included offense of (B)(2). *State v. Johnson* (Mar. 16, 1997), Hamilton App. No. C–960583, unreported, at 2, 1997 WL 133435. Subsection (B)(2) requires evidence that the defendant either tortured or cruelly abused the child, while (B)(1) requires evidence that the defendant abused the child. The original complaint alleged that appellant "did cruelly abuse Tea Burdine," and the amended complaint alleged that appellant did "abuse such child." Therefore, we find that the trial court properly amended the original complaint because it contained a lesser offense of the offense alleged in the original complaint.

We also find no merit in appellant's argument that the legislature intended to establish a distinct offense involving corporal punishment with R.C. 2919.22(B)(3) and that the court created its own moral code that disallows corporal punishment. When determining whether a defendant has abused a child pursuant to R.C. 2919.22(B)(1), the trier of fact may consider " 'the circumstances giving rise to the harm to the child, [and] the disciplinary measures employed by the parent.' " *State v. Ivey* (1994), 98 Ohio App.3d 249, 258, 648 N.E.2d 519, 525, quoting *In re Noftz* (Aug. 22, 1986), Huron App. Nos. H–85–26 and H–86–11, unreported, 1986 WL 9098. To hold otherwise would support the illogical conclusion that a person may administer corporal punishment that is considered child abuse pursuant to R.C. 2919.22(B)(1), and then may not be held to have violated R.C. 2919.22(B)(1) because 2919.22(B)(3) holds a higher standard for corporal punishment. R.C. 2919.22(B)(3) has a higher standard than 2919.22(B)(1) because it also requires the element that the act was "excessive under the circumstances." Since R.C. 2919.22(B)(3) requires other elements, it logically carries a higher penalty. Accordingly, appellant's first assignment of error is overruled.

---

1. Violations of R.C. 2919.22(B)(2) and (3) are felonies of the third degree. R.C. 2919.22(E)(3).

Assignment of Error No. 2:

"The trial court erred to the substantial prejudice of the defendant–appellant by denying Ms. Burdine's motion for acquittal when at the close of the state's case the state failed to prove beyond a reasonable doubt the essential elements of the offense."

Appellant argues that the trial court erred in overruling her motion for an acquittal pursuant to Crim.R. 29. Appellant's counsel at the end of the state's presentation of evidence offered a motion based upon Crim.R. 29, stating that the state failed to prove that appellant abused the child.

Crim.R. 29(A) states:

"Motion for judgment or acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."

A trial court's decision to deny a Crim.R. 29(A) motion for acquittal based upon the sufficiency of the evidence will be upheld if, construing the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of the charge proven beyond a reasonable doubt. *State v. Dennis* (1997), 79 Ohio St.3d 421, 430–431, 683 N.E.2d 1096, 1105–1106, following *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573–574, and *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

The essential elements for a violation of R.C. 2919.22(B)(1) are outlined in *Ivey:*

" 'To establish a violation of R.C. 2919.22(B)(1), the state must prove, beyond a reasonable doubt: (1) that the child is under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, (2) an affirmative act of abuse, and (3) which act was reckless, that is, perpetrated with heedless indifference to the consequences of the action.' " (Citation omitted.) *Ivey,* 98 Ohio App.3d at 257, 648 N.E.2d at 525, quoting *State v. Bogan* (June 14, 1990), Montgomery App. No. 11920, unreported, at 3–4, 1990 WL 80572. Therefore, the trial court's decision to overrule appellant's motion for an acquittal will be upheld if a review of the evidence shows that a rational trier of fact could find that these three essential elements were proven beyond a reasonable doubt. The parties do not dispute that the state provided sufficient evidence to satisfy the first element: that the child was under eighteen years of age. Therefore, we

examine the evidence to determine whether sufficient evidence was presented concerning the second and third elements.

The second element requires the state to prove that an affirmative act of abuse occurred. In making the determination of abuse, the trial court must look at the circumstances giving rise to the harm to the child, the disciplinary measures employed by the parent, the child's past history, and any other potential relevant factors. *Ivey*, 98 Ohio App.3d at 258, 648 N.E.2d at 525–526. Child abuse is defined as "an act which inflicts serious physical harm or creates a substantial risk of serious harm to the physical health or safety of the child." *Id.* at 257, 648 N.E.2d at 525. Serious physical harm is defined as any of the following:

"(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

"(b) Any physical harm that carries a substantial risk of death;

"(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

"(d) Any physical harm that involves some permanent disfigurement, or that involves some temporary, serious disfigurement;

"(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering, or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5).

In the present case, the following evidence was presented concerning the child's injuries. Wayne Justice, appellant's father, testified that he observed bruises on the child "above her buttocks, around her back, I guess where the kidneys would be located, on both sides." Justice stated that the bruises "were purple and red and a little black in it." Officer John Lucas testified that the child had "what I would term moderate bruising, starting at the lower back, going down onto her buttocks" that were "purple and red in color and appeared to be bruising that had not been there very long. Fairly recently sustained." Lucas stated that the bruises were somewhat raised so that they were swollen and that the child did not appear to be in pain.

Michael Kolmer, an investigator for Clermont County Children Services, testified that he investigated the allegations of abuse, and met with appellant and the child on October 7, 1996. Kolmer testified that the child had "bruising on her lower back, in the buttocks." Kolmer further testified that the color of the bruises was "a yellowish and faint bluish kind of, yellowish, they were fading. They were, in my opinion, they're older bruises than, like real recent. They were

a couple, three or four days old maybe * * * [and] they were completely fading, fading away by the time I got there."

The state also submitted photographs of the child taken by Kolmer. The eight photographs show bruising on the right hip and the buttocks of the child.

The trial court, while reviewing appellant's Crim.R. 29 motion, discussed the statutory definition of serious physical harm contained in R.C. 2901.01(A)(5)(a-e). The court found that the evidence did not show serious physical harm according to R.C. 2901.01(A)(5)(a-d). The court did find:

"For purposes of your motion only, it would be the Court's beliefs, based upon the photographs that were presented, that the act which caused these bruises, involved acute pain of such duration, which involved prolonged or intractable pain for this child of two years of age. And for purposes of your motion only, in view of the fact that these bruises were visible for days after the event, that there may have been some temporary, serious disfigurement for this child, based upon the photographs, the Court has before it. Therefore, for purposes of your Rule 29 motion, it will be overruled."

After having reviewed the complete record and considering the standard of "serious physical injury" stated in R.C. 2901.01(A)(5), we find that a rational trier of fact could conclude that the child received serious physical harm. The photographs of the child's injuries show profuse bruising across her buttocks extending into her back area. The force necessary to create such bruising must have been great, and was not accidental on the part of the perpetrator. Clearly, this amount of corporal punishment was unnecessary and unwarranted. Therefore, we find that the state presented sufficient evidence to satisfy the second element that appellant "committed an affirmative act of abuse."

The third element to establish a violation of R.C. 2919.22(B)(1) is recklessness. "Existence of the culpable mental state of recklessness is an essential element of the crime of endangering children." *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144, paragraph one of the syllabus. R.C. 2901.22(C) states:

"A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

A review of the record shows that while being shown the photographs of her child, appellant told Officer Sue Madsen, "I must have done this. I didn't realize I hit her so hard." A reasonable person could infer based upon appellant's statement, and a review of the photographs, that appellant's actions were more

than negligent, but were in fact reckless because appellant acted with heedless indifference to the consequences of her actions.

Accordingly, we find that the trial court did not err in overruling appellant's motion for an acquittal pursuant to Crim.R. 29 because the state provided sufficient evidence to establish all of the elements outlined in *Ivey*. Appellant's second assignment of error is overruled.

### Assignment of Error No. 3:

"The judgment and finding of the trial court are against the manifest weight of the evidence."

Appellant also argues that her conviction was against the manifest weight of the evidence. We disagree.

"The weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *State v. Smith* (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668, 691, following *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546–547. The weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact. *State v. Bell* (Jan. 26, 1998), Madison App. No. CA96–07–027, unreported, at 15, 1998 WL 37486. The trier of fact has the benefit of seeing and hearing the witnesses testify, and is in the best position to determine the facts of the case. *In re Good* (1997), 118 Ohio App.3d 371, 377–378, 692 N.E.2d 1072, 1076–1077.

In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court must unanimously disagree with the fact finder's resolution of the conflicting testimony. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d at 546–547.

" 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720–721.

We have already outlined the evidence presented against appellant during her trial. Following a review of the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we find no basis to believe that appellant's convictions were against the manifest weight of the evidence. See *Smith*, 80 Ohio St.3d at 114, 684 N.E.2d at 691–692. The

testimony presented, combined with the photographs of the child's injuries, support the conclusion that appellant endangered her child in violation of R.C. 2919.22(B)(1). Also, appellant's credibility is suspect when comparing her claim that she simply "tapped" the child on the buttocks with the photographs of the child's injuries. Therefore, we find that the greater amount of credible evidence, or the manifest weight of the evidence, supports appellant's conviction. Appellant's third assignment of error is overruled.

*Judgment affirmed.*

WILLIAM W. YOUNG, P.J., concurs.

KOEHLER, J., dissents.

KOEHLER, Judge, dissenting.

I must respectfully dissent. I concur with the majority's decision to overrule appellant's first assignment of error. However, I disagree with its decision to overrule appellant's second and third assignments of error. The majority is correct in applying the elements in *State v. Ivey* (1994), 98 Ohio App.3d 249, 648 N.E.2d 519, to analyze whether appellant violated R.C. 2919.22(B)(1), but I disagree with its conclusions on the second and third elements.

In order to satisfy the second element of *Ivey,* the state must show that the child suffered "serious physical harm." In order to determine what constitutes "serious physical harm," we need to review similar cases. Other courts have held that "bruising alone is insufficient to establish abuse." *Ivey,* 98 Ohio App.3d at 259, 648 N.E.2d at 526; *In re Schuerman* (1991), 74 Ohio App.3d 528, 532, 599 N.E.2d 728, 730–731; *Shaker Hts. v. Wright* (June 27, 1996), Cuyahoga App. No. 69517, unreported, at 23, 1996 WL 355309. The court in *Ivey* found that evidence that the child had "a bruised left eyelid, bruises, welts, and lacerations caused by a belt whipping on the buttocks and lower legs, and a swollen hand" did not prove that the defendant caused the child serious physical harm or threatened a substantial risk of harm as defined by R.C. 2901.01(E). *Ivey,* 98 Ohio App.3d at 255–256, 648 N.E.2d at 523–524. The court in *Wright,* Cuyahoga App. No. 69517, unreported, found that marks from bruises that were observable on a child's hip eleven months after the offense were not sufficient to show serious physical harm. The court reasoned:

"This conclusion, that the element of seriousness was lacking, is buttressed by the following: (1) the marks were small and were receding over time; (2) the emergency room physician testified that he thought that there was no scarring at the site of the marks and did not feel there had been any abuse; (3) the emergency room report identified the marks as bruises or contusions, not scars;

(4) while the injury site was sore the evening it was inflicted, the injury did not prevent the boy from sleeping and the victim experienced no pain at the site of the injury the morning after the injury was inflicted and thereafter enjoyed his normal activities without pain or difficulty; (5) the injury required no follow-up medical care or physical therapy; and, (6) the treating physician did not hospitalize the boy." *Id.* at 23–25.

We have also similarly held that swatting a nine-year-old with a paddle hard enough to cause a welt and bruising was not abuse and did not create a substantial risk of serious physical harm to the child. *Clark v. Clark* (1996), 114 Ohio App.3d 558, 683 N.E.2d 800.

The key word in this case is "serious." It is essential that we distinguish "serious physical harm" from "physical harm." There is little doubt that a reasonable person could find that, based upon the facts of the present case, appellant caused "physical harm" to the child. For example, in *State v. Flinn* (Mar. 20, 1997), Licking App. No. 96 CA 118, unreported, 1997 WL 219502, the appellate court upheld the trial court's overruling of a Crim.R. 29 motion for acquittal. The court in *Flinn* found that evidence of spankings that caused bruising on a child's lower back and buttocks was sufficient evidence of physical harm to overrule the motion for acquittal. *Id.* at 7.

However, a review of the record does not show that the child suffered serious physical harm or that appellant's actions created a substantial risk of serious harm to the physical health or safety of the child. In fact, the prosecutor stated during the trial, "I'm not alleging serious physical harm, your Honor. I'm alleging physical harm." If the prosecution was not attempting to prove serious physical harm, it makes sense that a review of the evidence presented by the prosecution shows that serious physical harm was not proven. Further, there was testimony that the bruising was moderate, and that it was fading, and that the child did not appear to be in pain. No evidence was presented that the child required any medical attention or that the child was in pain after the incident. Accordingly, I would find that the state did not prove the second element of *Ivey*.

I would also find that the state failed to prove the third element of *Ivey*. A review of the record shows that the state made no attempt to prove the mental state of appellant. In fact, the only evidence that indicates appellant's mental state was her statement to Officer Madsen while shown the pictures taken by Kolmer that "I must have done this. I didn't realize I hit her so hard." While appellant may have been negligent in her spanking of her child, "I didn't realize I hit her so hard" is insufficient to show that she acted recklessly. Therefore, I would find that the state failed to establish the third element of *Ivey*.

While spanking a two-year-old child so severely as to cause bruising can be a serious matter, we should be constrained by the definition of "serious physical

harm" and case law. A reversal of appellant's conviction would not condone appellant's behavior, but instead clarify that her behavior did not rise to the level the legislature intended for child endangering contained in R.C. 2919.22(B)(1). Convicting appellant of child abuse, which requires "serious physical harm," when the evidence shows only "physical harm" is as unjust as convicting a person of aggravated murder without any aggravating circumstances.

It should also be noted that Clermont County Children Services Board investigated the incident and determined that it did not need to be involved. Also, even though the court convicted appellant of violating R.C. 2919.22(B)(1), the court sentenced her to ninety days of incarceration which was suspended, two years of nonreporting probation, and a fine of $100 plus court costs. It is apparent that Clermont County Children Services and the trial court did not consider appellant's actions so severe that there would be future danger to the child. Accordingly, I would sustain appellant's second and third assignments of error and reverse appellant's conviction.