DECISION.
Defendant-appellant Rodney Miller appeals his conviction for child endangerment under R.C. 2929.22(B)(1). The facts, as presented at his trial, are as follows.
Miller was an ex-boyfriend of Dina Berry. On August 19, 1998, Miller went to Berry's apartment, where she lived with her four children (none of whom were Miller's). According to Berry, Miller was angry with her, hit her, and locked her in a room in the apartment. Berry claimed that, in an attempt to summon help, she drank rubbing alcohol to make herself sick. An ambulance then transported her to a hospital to receive treatment.
After receiving treatment, Berry went to her sister's home with her children. At her sister's, she noticed that one of her children, Darcyl, a five-year-old, had a large bruise on his lower back and bruises on his ankle and arm. Berry stated that Darcyl, who appeared upset and nervous, told her that, while she had been locked in the room in the apartment, Miller had hit him on the back with a "big belt" and had thrown him into a wall and onto a bed. (Photographs of the bruises were admitted into evidence at trial. Those photographs are not part of the record on appeal, and after an exhaustive search, we have been unable to locate them.)
On August 24, 1998, Darcyl gave a similar account of how he had received his bruises to a caseworker for the Hamilton County Department of Human Services. On September 15, 1998, a different caseworker and a police officer interviewed Darcyl. Darcyl also told them how Miller had hit him with a belt and had thrown him down.
Miller was charged with child endangerment. At trial, Darcyl did not testify, but, after a hearing, the court permitted Berry, the two caseworkers, and the police officer to recount what Darcyl had told them about his injuries. A jury found Miller guilty, and he now appeals his conviction, asserting six assignments of error. For the sake of clarity, we do not address the assignments in order.
 I. Evid.R. 807
In his fifth assignment, Miller asserts that the trial court erred by allowing Darcyl's statements into evidence. This assignment involves the hearing that the court held regarding Darcyl's statements. At that hearing, Berry, one of the caseworkers, and the police officer all testified and explained that Darcyl had told them about how Miller had hurt him. The hearing was held pursuant to Evid.R. 807, which creates a hearsay exception for certain statements made by children in abuse cases. For a statement to be admissible under the rule, the court must find, among other things, (1) that the child "was particularly likely to be telling the truth when the statement was made and that the test of cross-examination would add little to the reliability of the statement,"[1] and (2) that the child's testimony "is not reasonably obtainable by the proponent of the statement."[2] Miller claims that the trial court erred by concluding that both of these requirements were satisfied.
Regarding the first requirement, Evid.R. 807 provides guidance for determining the trustworthiness of the statement at issue. Evid.R. 807 provides, "In making its determination of the reliability of the statement, the court shall consider all of the circumstances surrounding the making of the statement, including but not limited to spontaneity, the internal consistency of the statement, the mental state of the child, the child's motive or lack of motive to fabricate, the child's use of terminology unexpected of a child of similar age, the means by which the statement was elicited, and the lapse of time between the act and the statement."[3]
Here, the court found that Darcyl had consistently related how he had been injured to his mother and to the investigators. The court also suggested that the lapse of time between Darcyl's injuries and his statements was short. The court then concluded that Darcyl's statements were sufficiently reliable to be admissible under Evid.R. 807. Based on the court's findings, we conclude that the court did not err in its determination. The court properly followed Evid.R. 807's guidelines, its findings were supported by the record, and we conclude that the findings were sufficient to satisfy the first requirement of Evid.R. 807.
Regarding the second requirement, Evid.R. 807 provides guidance as to when the child's testimony "is not reasonably obtainable by the proponent of the statement." The rule states that the child's statement is not reasonably obtainable if "[t]he child refuses to testify concerning the subject matter of the statement * * * after a person trusted by the child, in the presence of the court, urges the child to both describe the acts described by the statement and to testify."[4]
Here, at the hearing, Darcyl was called to testify. Initially, he refused, and, according to the prosecutor, he was "crying and frightened." But eventually he agreed to talk to the court. He then sat on the witness stand in his mother's lap. After answering a few introductory questions from the prosecutor concerning his age and his school, he would not answer questions about Miller. At one point, Berry asked Darcyl if he could sit on the stand by himself, and he answered no. The court found that Darcyl was "obviously distraught and not willing to testify despite the urging [in] the presence of the Court by a person he obviously trusted because he allowed her to hold him as he was questioned." Accordingly, the court found that Evid.R. 807's second requirement was met. Based on our review of the record, which supports the court's findings, we cannot conclude that the court erred. We overrule Miller's fifth assignment.
In Miller's sixth assignment, he raises an ineffective-assistance-of-counsel claim. He argues that defense counsel was ineffective because counsel failed to object to the court's admission of Darcyl's statements. But, as we held in the fifth assignment, the court properly held an Evid.R. 807 hearing and properly concluded that Darcyl's statements should be admitted. We overrule the sixth assignment.
 II. Jury Instructions
In his first assignment, Miller challenges the trial court's instructions to the jury regarding reasonable doubt. R.C.2901.05(B) states, "As part of its charge to the jury in a criminal case, the court shall read the definitions of `reasonable doubt' and `proof beyond a reasonable doubt,' contained in division (D) of this section." Division (D) states, "`Reasonable doubt' is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. `Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs." Here, the court recited most of the language from division (D), but it omitted the second sentence: "It is doubt based on reason and common sense." Miller, who did not object to the instructions at trial, now claims that the court's omission of the sentence amounts to plain error.
A jury instruction does not constitute plain error unless, but for the mistake, the outcome of the trial clearly would have been otherwise.[5] Here, the instruction was clearly incomplete. Reasonable doubt is probably the most important aspect of the jury charge, and we are tempted to reverse solely on this issue, under a bright-line rule. We strongly caution courts to read the complete instructions under R.C. 2901.05 so as to avoid any suggestion that the jury might have been misled. But, in this case (and limited to the facts of this case), we hold that the instruction given was not plain error. Based on the record before us, we cannot conclude that the outcome of the trial would have been different if the complete instructions had been given.[6] We overrule Miller's first assignment.
In Miller's second assignment, he challenges another aspect of the jury instructions. These instructions involved the statements made by Darcyl. The court said:
 The victim in this case, Darcyl Berry, did not testify in this case. The Court held a hearing on this issue before the trial began. At that hearing the Court determined that, pursuant to the guidelines established by the Ohio Rules of [E]vidence, Darcyl Berry is not reasonably available to testify. The prosecutor, Darcyl, his mother, Mr. Miller, and Mr. Miller's attorney were all present and participated in that hearing.
 Because the Court has made that finding[,] Darcyl did not testify. However, statements he made to other witnesses were admitted as though Darcyl were here making them himself.
 You may give no weight to the fact that Darcyl did not make these statements himself. You are to give the same weight to these statements as you would to any testimony of any other witness.
Miller claims that the last paragraph was prejudicial. He claims that, by telling the jury to give "the same weight" to Darcyl's statements, the court essentially told the jury that it could not weigh the statements as it would any other evidence. Because he did not object to this instruction at trial, he must assert that it was plain error. While we believe that the instruction should not have been given, we cannot hold that it rose to the level of plain error.
The last paragraph was improper, as it invaded the province of the jury in weighing evidence. A better instruction would have been, "You are to weigh the testimony as you would weigh other evidence." Juries must be able to weigh various pieces of evidence. A juror is entitled, for instance, to give more weight to the testimony of a witness that he or she deems to be trustworthy than to the testimony of a witness that he or she thinks is dishonest. But we do not believe that the outcome of the trial would have been otherwise if the improper instruction had not been given. Before giving the allegedly prejudicial instruction, the court clearly instructed the jurors that they could weigh the evidence as they desired. The court stated, "Testimony relating to this case has now been introduced. You will determine what weight the testimony should be given in light of all the evidence produced. You as jurors have the sole and conclusive duty to decide the credibility of the witness[es] who testified in this case. * * * [Y]ou will assign to the testimony of each witness such weight as you deem proper. You are not required to believe the testimony of any witness simply because it was given under oath. You may believe or disbelieve all or any part of any of the testimony of any witness."
In light of these prior instructions (and again limited to the facts of this case), we conclude that the court's challenged instruction was not plain error. We overrule the second assignment.
 III. Sufficiency and Manifest Weight
In his third assignment, Miller asserts that his conviction under R.C. 2929.12(B)(1) was based on insufficient evidence. R.C. 2929.12(B)(1) states, "No person shall do any of the following to a child under eighteen years of age * * *: (1) Abuse the child." Miller points out that there was no evidence that any medical treatment was sought for Darcyl's bruises. Miller claims that, because no medical treatment was sought, and because there was no evidence presented that Darcyl's welfare was affected, there was insufficient evidence of "abuse."
Here, the trial court gave the jury the definition of "abuse" from the Ohio Jury Instructions: "any act which causes physical or mental injury that harms or threatens to harm the child's health or welfare."[7] Taken in the light most favorable to the state, the record reveals that Miller attacked Darcyl with a belt and then threw him down, for no apparent reason. The attack caused bruises that were still visible on September 15, when the second caseworker and the police officer interviewed Darcyl. Under these circumstances, we conclude that a reasonable juror could have found Miller guilty of the charged offense.[8]
We overrule Miller's third assignment.
In Miller's fourth assignment, he asserts that his conviction was against the manifest weight of the evidence. Miller claims that Berry's testimony, including that Miller locked her in a room and that she drank rubbing alcohol to get away from him, was simply unbelievable. Miller claims that Berry had a motive to lie and a motive to manipulate Darcyl to lie, because the evidence revealed that the Department of Human Services had previously threatened to remove her children from her home for neglect. But, despite any inferences that could be made against Berry's testimony, we conclude that the jury's verdict was not against the manifest weight of the evidence. To begin, we do not believe that Berry's version of events was so incredible that it was unbelievable, and there was no specific evidence that Berry manipulated Darcyl. Also, the record reveals that Darcyl consistently stated that Miller had caused his injuries. In addition to telling this to his mother, he told two caseworkers and a police officer, all of whom testified at trial. Based on the testimony of these witnesses, we cannot conclude that the jury clearly lost its way. Miller's fourth assignment is overruled.
Therefore, the judgment of the trial court is affirmed.
Judgment affirmed.
 DOAN, P.J., and GORMAN, J., concur.
Please Note:
The court has recorded its own entry on the date of the release of this Decision.
[1] Evid.R. 807(A)(1).
[2] Evid.R. 807(A)(2).
[3] Evid.R. 807(A)(1).
[4] Evid.R. 807(B)(1).
[5] State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus.
[6] See State v. Burr (May 6, 1994), Lake App. No. 93-L-086, unreported; State v. Rice (Jan. 5, 1983), Hamilton App. No. C-820133, unreported.
[7] 4 Ohio Jury Instructions (1997), Section 519.22, at 341.
[8] See State v. Howard (Dec. 3, 1999), Lake App. No. 98-L-265, unreported (abuse even though the victim did not receive medical attention); State v. Burdine-Justice (1998), 125 Ohio App.3d 707,709 N.E.2d 551 (bruising as evidence of abuse).