DECISION
Louis A. Maher, defendant-appellant, appeals a decision of the Franklin County Court of Common Pleas finding him guilty of aggravated robbery, a violation of R.C. 2911.01.
On January 7, 2000, Columbus Police Officers Lance Ford and John Kuntupis were given the assignment to arrest appellant for a parole violation. Appellant had escaped from a work release center after climbing through a window at the center. Appellant was required to be at the center pursuant to community control sanctions imposed upon him related to a prior robbery charge. Around 5:00 p.m., the officers were informed appellant was at the Little Caesar's restaurant located in the K-Mart store on Westerville Road in Columbus, Ohio. Appellant had been employed at the restaurant and was there to pick up his paycheck.
The officers found appellant in a back room of the store. When the officers attempted to arrest appellant, appellant began to yell "I'm not going back. I'm not going back." A struggle ensued between the two officers and appellant. Officer Ford testified that while they were struggling on the floor, he felt "a hand on my knee, and I felt it moving up. And I felt it hit the bottom and felt my holster move up a little bit." Officer Ford stated he looked down and saw appellant's hand on his holster. Officers Ford and Kuntupis both testified Officer Ford began yelling "[l]et go of [my] gun." Officer Ford further testified he was able to get appellant to release the bottom of his holster "by jamming his fingers between the holster and the floor." They continued to struggle and appellant was finally subdued after two additional officers arrived at the office.
On January 14, 2000, appellant was indicted by a grand jury for escape, a violation of R.C. 2921.34, and aggravated robbery, a violation of R.C. 2911.01. Appellant entered a guilty plea for the escape charge. Appellant waived his right to a trial by jury and was found guilty by the trial court for aggravated robbery. Appellant appeals his aggravated robbery conviction and presents the following single assignment of error:
 A TRIAL COURT ABUSES ITS DISCRETION WHEN IT ENTERS JUDGMENT OF CONVICTION ON THE CHARGE OF ROBBERY, WHERE SUCH FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Appellant argues in his assignment of error that his conviction was against the manifest weight of the evidence because "pursuant to both the testimony of [appellant] and eyewitness Cynthia Cruz, [appellant] at no time attempted to remove the weapon of either officer."
The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. State v. Clemons (1998), 82 Ohio St.3d 438,444, certiorari denied (1999), 82 Ohio St.3d 438; State v. Buterbaugh (Sept. 16, 1999), Franklin App. No. 98AP-1093, unreported, discretionary appeal not allowed (2000), 87 Ohio St.3d 1490, certiorari denied530 U.S. 1247, 120 S.Ct. 2697. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the factfinder's resolution of the conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Whether a criminal conviction is against the manifest weight of the evidence "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180, 193, certiorari denied (1999), 527 U.S. 1042,119 S.Ct. 2407.
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Thompkins, at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
"The weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact." State v. Burdine-Justice (1998), 125 Ohio App.3d 707, 716. The trier of fact has the benefit of seeing and hearing the witnesses testify and is in the best position to determine the facts of the case. In re Good (1997), 118 Ohio App.3d 371, 377.
R.C. 2911.01(B) states:
 No person, without privilege to do so, shall knowingly remove or attempt to remove a deadly weapon from the person of a law enforcement officer, or shall knowingly deprive or attempt to deprive a law enforcement officer of a deadly weapon, when both of the following apply:
 (1) The law enforcement officer, at the time of the removal, attempted removal, deprivation, or attempted deprivation, is acting within the course and scope of the officer's duties;
 (2) The offender knows or has reasonable cause to know that the law enforcement officer is a law enforcement officer.
In the present case, four individuals testified concerning the events that occurred when the officers attempted to arrest appellant: Officers Ford and Kuntupis, Cynthia Cruz, and appellant. Appellant testified that when he saw the officers walk into the office, he started to stand up. When the officers asked appellant if he was Louis, appellant lied and told them he was someone else because he did not want to go back to jail. After an officer asked him whether he had any identification, appellant stated:
 * * * I told them I didn't have no ID. And they said, "That you in the picture?" And I said, "Yeah." And they said, "Get down." And I kind of, you know, started moving with them. One was coming around me this way. Other one already had my left hand cuffed. And I fell to the floor because I fell over top of one of their legs.
Appellant testified that he was maced by the officers "* * * [a]nd that's when my right arm got free and [I] kept trying to give them my arm and say '[h]ere it is, take it,' and they wouldn't take my arm. They just kept saying '[s]top resisting.' I'm still trying to lay on the floor." Appellant explains part of the reason for the struggle was because "I had to struggle to get my arm free to give it to them." Appellant also stated that "I don't know if they didn't know [my right arm] was available for them to grab or what. But I kept trying to hit the officer with my arm so he could just take it."
Officer Ford stated that because of the seriousness of appellant's prior felony, he had his weapon drawn when he entered the office. He testified that when he saw appellant begin to struggle with Officer Kuntupis, he placed his weapon back into his holster but did not snap the holster strap over the gun. Officer Ford described the attempted arrest as "an immediate struggle," and as soon Officer Kuntupis handcuffed one of appellant's hands, he began to pull away from him. Officer Ford stated that appellant "continued to flail himself about back and forth" and when the officers attempted to grab his right hand, "he pulled forward and fell to the floor" along with the officers. Officer Ford testified he saw appellant's "palm was on the bottom of my weapon pushing it out. * * * [W]hat he started to do was push it out of the holster like that. So I pushed down on the holster."
Officer Kuntupis testified that when he tried to handcuff appellant, he "resisted heavily." Officer Kuntupis stated that he heard Officer Ford say "'[l]et go of my gun.' So [he] took out [his] mace and maced him about a one-second blast." He also testified that he gave loud repetitive commands to appellant to give him his arm, but "[h]e never complied."
Cynthia Cruz, an employee of the K-Mart store where the Little Caesar's restaurant was located, testified that she was there when two uniformed police officers arrived. Cruz testified that "when they came in, [appellant] stood up. And they said, `Louis,' and he said he was somebody else." She stated that after one officer put a handcuff on appellant, they "just went down to the ground." Cruz also stated that she ran from the office because she was scared. Cruz also testified that she could see what was occurring from an adjoining room through a window partially covered with window blinds. Cruz testified she yelled at appellant: "Give him your arm, give him your arm." She further testified the officers eventually were able to subdue appellant and arrest him. She stated she did not see appellant reach for the officer's gun and did not remember hearing anyone say "[l]et go of the gun."
Appellant's version of the events is less credible than the officer's version based in part upon some curious claims by appellant. Appellant claims the struggle began because he "fell over top of one of their legs" and continued because he "kept trying to give them [his] arm" and for some reason, the officers wouldn't take it even though he was just trying to "lay on the floor." Appellant also claims he "kept trying to hit the officer with my arm so he could just take it." Additionally, appellant's credibility is questionable because he admitted during his testimony that he lied to the officers in order to avoid going to prison. A review of the testimony of the three other witnesses shows their testimonies were consistent.
Therefore, following a review of the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find no basis to believe the trial court lost its way, that a manifest miscarriage of justice occurred, or that appellant's conviction was against the manifest weight of the evidence. See State v. Smith (1997), 80 Ohio St.3d 89, 114. We find the trial court could have reasonably concluded that appellant attempted to take Officer Ford's weapon. See, also, State v. Scruggs (Mar. 9, 2000), Franklin App. No. 99AP-664, unreported, discretionary appeal not allowed 89 Ohio St.3d 1427.
Accordingly, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BOWMAN and PETREE, JJ., concur.