This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made.
{¶ 1} Appellant Christine Jones has appealed from a decision of the Summit County Court of Common Pleas, Juvenile Division that adjudicated her minor children abused and/or dependent. This Court affirms.
 I {¶ 2} On April 29, 2002, Summit County Children Services Board ("CSB") filed a complaint against Appellant alleging that Appellant's minor child, K.B., was abused pursuant to R.C. 2151.031, neglected pursuant to R.C. 2151.03(A), dependent pursuant to R.C. 2151.04, and endangered. The complaint further alleged that Appellant's minor sons, T.J. and G.W., were neglected and/or dependent children.
 {¶ 3} On July 15, 2002, the parties stipulated to the following facts:
"On April 27, 2002, [K.B.], age 2, and her brothers, [G.W.], age 4, and [T.J.], age 7, were taken into custody by Akron Police pursuant to [Juv.R. 6] after [K.B.] was taken to Children's Hospital by the paternal grandparents and found to have a significant bruise on her buttocks estimated to be five (5) to seven (7) days old and a slight bruise and scratch on the side of her face estimated to be one (1) to two (2) days old. [K.B.] was examined and the marks are believed to be caused by a hand. The paternal grandparents noticed the marks when they got [K.B.] for a weekend visit. The mother indicated that the marks on the face happened when her brothers were playing with [K.B.], but she expressed surprise at the five (5) to seven (7) days old bruise on her buttocks. [K.B.] has made indications that `Lenny' caused her bruising. Neither [G.W.] nor [T.J.] report being hit."
 {¶ 4} The trial court granted CSB emergency temporary custody of Appellant's minor children.
 {¶ 5} The case proceeded to adjudication, and on July 31, 2002, the magistrate found by clear and convincing evidence that K.B. was a dependent and abused child and that T.J. and G.W. were dependent children; the magistrate dismissed all allegations of neglect. The trial court adopted the magistrate's decision and adjudicated all three minor children dependent, and K.B. was adjudicated abused; the trial court dismissed all allegations of neglect.
 {¶ 6} A dispositional hearing was held on August 6, 2002, and the magistrate found that "it is not possible to return the subject children to their home as to do so would not be in the best interests of the children[,]" and granted temporary custody to CSB. Appellant timely filed objections to the magistrate's July 31, 2002 decision that adjudicated the minor children abused and dependent; Appellant did not appeal the dispositional decision rendered by the magistrate. The trial court overruled Appellant's objections. The court found that the magistrate was correct in finding that the allegations in the complaint were proven by clear and convincing evidence as to abuse and dependency regarding K.B., and dependency as to T.J. and G.W. The evidence indicated that two-year-old K.B. had various bruises along her body and that Lenny, Appellant's boyfriend, struck K.B. on the buttocks. The court adopted the magistrate's decision insofar as the magistrate found that the minor children were dependent, and K.B. was abused; the trial court dismissed all allegations of neglect on the ground that the claims were not proven. Appellant has timely appealed, asserting two assignments of error, which we have consolidated to facilitate review.
 II Assignment of Error Number One
"The trial court erred in finding that the child, [K.B.], was a victim of physical abuse as there was no evidence, other than unfounded speculation by the state's doctor, that the child suffered from acute pain of lasting duration that resulted in substantial suffering, or that the pain lasted for an extended period of time or was intractable."
 Assignment of Error Number Two
"The trial court erred in finding that [K.B.] was an abused child for the reason that the lower court's judgment is not supported by sufficient competent, clear and convincing evidence tending to support the judgment either directly or by reasonable inference."
 {¶ 7} In Appellant's first and second assignments of error, she has argued that the trial court erred in concluding that K.B. was an abused child. Specifically, Appellant has contended that there was insufficient evidence to show that K.B. suffered from acute pain of lasting duration. This Court disagrees.
 {¶ 8} As an initial matter, we note that the decision from which Appellant has appealed is a final appealable order. Pursuant to R.C.2501.02, "the finding, order, or judgment of a juvenile court that a child is delinquent, neglected, abused, or dependent" is subject to appeal. Thus, an adjudication that a child is abused, neglected, or dependent followed by a disposition awarding temporary custody to a public children services agency pursuant to R.C. 2151.353(A)(2) constitutes a final appealable order. In re Murray (1990),52 Ohio St.3d 155, 161; In re Smith (1989), 61 Ohio App.3d 788, 789-790. Here, the trial court adjudicated Appellant's minor daughter abused and dependent and adjudicated Appellant's minor sons dependent. Then after a dispositional hearing was held, the magistrate granted temporary custody to CSB. Accordingly, the order from which Appellant has appealed is a final appealable order.
 {¶ 9} In overruling Appellant's objections, the trial court concluded that K.B. was abused pursuant to R.C. 2151.031(B) and R.C.2919.22. The court held:
"The clear and convincing evidence shows [K.B.] was struck with sufficient force to cause tissue damage and bruising. As a result she suffered `prolonged pain.' This constitutes `serious physical harm' pursuant to [R.C. 2901.01(A)(5)(e)].
"R.C. 2151.04(B) [sic] defines an `abused' child as one who `is endangered as defined in [R.C. 2919.22].' That statute, at [R.C.2919.22(B)(3)] provides a child is endangered when corporal punishment is excessive under the circumstances and creates a risk of serious physical harm to the child. Thus the Magistrate was correct in finding [K.B.] to be abused."
 {¶ 10} R.C. 2151.031(C) provides that an "abused child" includes any child that:
"Exhibits evidence of any physical or mental injury or death, inflicted other than by accidental means, or an injury or death which is at variance with the history given of it. Except as provided in division (D) of this section, a child exhibiting evidence of corporal punishment or other physical disciplinary measure by a parent, guardian, custodian, person having custody or control, or person in loco parentis of a child is not an abused child under this division if the measure is not prohibited under [R.C. 2919.22]."
 {¶ 11} According to R.C. 2151.031(C), a child is not an "abused child" unless the corporal punishment meted out by the parent or person in loco parentis is prohibited by R.C. 2919.22, which states, in pertinent part:
"(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
"(1) Abuse the child;
"(2) Torture or cruelly abuse the child;
"(3) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child;
"(4) Repeatedly administer unwarranted disciplinary measures to the child, when there is a substantial risk that such conduct, if continued, will seriously impair or retard the child's mental health or development;
"(5) Entice, coerce, permit, encourage, compel, hire, employ, use, or allow the child to act, model, or in any other way participate in, or be photographed for, the production, presentation, dissemination, or advertisement of any material or performance that the offender knows or reasonably should know is obscene, is sexually oriented matter, or is nudity-oriented matter."
 {¶ 12} Pursuant to R.C. 2919.22(B)(3), corporal punishment does not rise to the level of child endangering unless the punishment "is excessive under the circumstances and creates a substantial risk of serious physical harm to the child." "Serious physical harm to persons" is defined in R.C. 2901.01(A)(5) as follows:
"(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
"(b) Any physical harm that carries a substantial risk of death;
"(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
"(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
"(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 13} The state need not establish abuse beyond a reasonable doubt; rather, abuse must only be established by clear and convincing evidence.[1] Juv.R. 29(E)(4); R.C. 2151.35; In re Schuerman (1991),74 Ohio App.3d 528, 531. Clear and convincing evidence is that which will "`produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" In re Adoption of Holcomb
(1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus. "Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof." In re Swisher (Apr. 23, 1997), 9th Dist. No. 17952, at 12-13, quoting State v. Schiebel
(1990), 55 Ohio St.3d 71, 74, certiorari denied (1991), 499 U.S. 961,111 S.Ct. 1584, 113 L.Ed.2d 649; see, also, In re Everhart (Dec. 11, 1996), 9th Dist. No. 17786, at 6. Thus, this Court will only reverse the trial court's adjudication of K.B. as an abused child if there is no competent credible evidence to support the trial court's decision. Everhart, supra at 6; In re Lennon, 5th Dist. No. 2002CA00373, 2003-Ohio-2645, at ¶ 7.
 {¶ 14} "Notwithstanding differing societal views on the appropriateness of corporal punishment, the law of Ohio has long recognized a parent's right to punish a child so long as the punishment given does not exceed the bounds of reasonableness." In re Barrett (Mar. 13, 1998), 1st Dist. No. C-970196, 1998 Ohio App. LEXIS 950, at *4. As such, "not all physical punishment can be construed as rising to the level of `abuse' punishable by law." Id.
 {¶ 15} Moreover, the appearance of a bruise or a temporary or slight injury generally does not constitute serious physical harm. Statev. Daugherty (June 28, 2001), 4th Dist. No. 00CA2572, 2001 Ohio App. LEXIS 3091, at *15. Therefore, in determining whether a child is abused for purposes of R.C. 2151.031, a trial court must review the totality of the circumstances in making its finding. Schuerman,74 Ohio App.3d at 531. "Specific factors to be considered by the trial court * * * include the circumstances giving rise to the harm to the child, the past history of the child, the nature and manner of the discipline administered to the child and the measure of discipline." Id; see In re Jandrew (Dec. 29, 1997), 4th Dist. No. 97 CA 4, 1997 Ohio App. LEXIS 5999, at *11, appeal not allowed (1998), 81 Ohio St.3d 1516 ("[I]n determining whether corporal punishment is excessive, a court must consider all attendant circumstances, including the age of the child, the child's response to noncorporal punishment, and the behavior being punished."); In re Bretz
(Dec. 12, 1990), 5th Dist. No. CA-419, 1990 Ohio App. LEXIS 5685, at *5.
 {¶ 16} In the case sub judice, the record, which lacks a complete transcript of the proceedings of the adjudication hearing and the dispositional hearing, contains some competent credible evidence from which the trial court could find by clear and convincing evidence that K.B. was an endangered child pursuant to R.C. 2919.22, and thus an "abused child" pursuant to R.C. 2151.031. Dr. Brett Luxmore, a doctor at Children's Hospital Medical Center of Akron, examined K.B. and averred in an affidavit that the bruises he found on K.B.'s body were "anywhere from 1 to 5 days" old. He further explained by way of affidavit testimony that:
"[K.B] had multiple bruises on her body. The locations of some of the bruises were not in typical locations of common toddler bruises i.e. the lower legs, forehead, extensor (front) surfaces. [K.B.] had bruises on her right cheek, left upper abdominal area, symmetric bruises on her thorax (back), linear bruise on the back of her right arm, and a linear bruise on her buttocks. The bruise on the back of her right arm appeared it was a result of someone grabbing her. The symmetric bruises on her back with the mark on her left upper abdomen were in a pattern as if an adult had placed their hands around her thorax and squeezed or shook her. The bruises are not normal bumper zone bruises that I routinely see on toddlers whether they are from common falls or from a bicycle accident."
 {¶ 17} The doctor described the bruise on [K.B.'s] buttocks as an "outline of a hand." He explained that such a mark is "made when a force is generated strong enough to break the capillaries between the fingers as blood is pushed away from the point of impact. The other bruises on her body, while they did not have this patterned appearance, were concerning because of their location and I could not explain them as being accidental." Dr. Luxmore gave his opinion that:
"Even though we live in a society in which corporal punishment is acceptable, this hit to [K.B.'s] buttocks was not within moderation as to have caused significant tissue damage to leave a bruise lasting days, and causing prolonged pain. * * * My assessment with [K.B.] of physical abuse was the fact she had multiple bruises in areas not typical of accidental injury as described. The bruise that was clearly from a hand was on her buttocks that shows [K.B.] was subjected to excessive force and had prolonged pain and suffering. Therefore, my final assessment was that the physical findings were consistent with physical abuse."
 {¶ 18} It is apparent from Dr. Luxmore's sworn affidavit that he noticed several bruises on K.B.'s body that were in unusual and unexplainable places. Such bruising, the doctor indicated, was not common for toddlers K.B.'s age because the bruises were not located in the "normal bumper zone" area. Based upon his observation of the child, he determined that K.B. was physically abused. The doctor's medical notes also indicate that the doctor suspected K.B. was physically abused. Dr. Luxmore's medical records for K.B. state: "Location of bruises 
patterns consistent with physical abuse."
 {¶ 19} Despite Dr. Luxmore's findings and diagnoses, Appellant has contended that "Dr. Luxmore engaged in unsupported speculation that [K.B.] suffered from prolonged pain," and "there were no findings in the hospital records indicating that [K.B.] suffered from `prolonged pain and suffering.'" Appellant has maintained that "[t]he hospital records examination findings and observations establish that the child did not incur any serious physical injuries, and she was not in pain when she was taken to the emergency room where she was alert, smiling, cooperative and playful."
 {¶ 20} The medical records do, in fact, state that the general appearance of K.B. was "clean" and "smiles." The records further note that the "emotional status" of K.B. was "cooperative, smiles playful." However, in arguing that K.B. appeared smiling and playful when examined by Dr. Luxmore, it is clear that Appellant is attempting to argue that the trial court should have placed a greater emphasis on the mental rather than the physical status of the child; in essence, Appellant has contended that a happy child cannot be an abused child. We believe that it is not unheard of, nor is it inconsistent, for a child to have a seemingly happy disposition, while at the same time be suffering from physical abuse. Moreover, the doctor indicated that the bruises were one to five days old.[2] Therefore, it is possible that when K.B. was examined by Dr. Luxmore she was no longer suffering from the pain of her bruises.
 {¶ 21} Furthermore, the doctor's affidavit testimony that K.B. suffered "prolonged pain" as a result of her bruises does not necessarily mean that she was in pain for an extended period of time. The doctor, in his affidavit, stated that "[t]he definition of physical abuse we use in the emergency department is injury caused by a caretaker. Injury includestissue damage beyond erythema or redness from a slap to any area on thebody." (Emphasis added.) In light of Dr. Luxmore's definition of "injury," this Court concludes that when the doctor stated that K.B. suffered "prolonged pain" he was indicating that the pain K.B. suffered was longer than what a child would normally experience after "a slap to any area on the body." Moreover, the doctor explained in his affidavit that "[p]ain is difficult to assess because pain perception varies from person to person. However, if one could imagine being hit with such substantial force as to leave a bruise lasting days we know this to be quite painful."
 {¶ 22} We also find that this case is distinguishable from our holding in In re Miles, 9th Dist. No. 01CA0054, 2002-Ohio-2438. The nine-year-old child in Miles had a history of biting friends and his four-month-old half-brother, and had not responded to conventional discipline. Finally, after another biting incident, the child's mother gave him a choice of either being spanked or having his cheek bitten. The child chose the latter option, and his mother's fiancé bit the boy on the cheek, leaving bite marks from the fiancé's upper and lower teeth. The child's injuries were reported to the Wayne County Children Services Board. A complaint was filed, and the child was subsequently adjudicated abused and placed in the permanent custody of the Children Services Board. The mother appealed the decision.
 {¶ 23} On appeal, this Court reversed the trial court's finding that the child was abused. Miles, supra at ¶ 13. We noted that "[t]he act of biting a child's cheek by an adult is clearly inappropriate[,]" but in reviewing a determination that a child is abused "the issue is whether the act created `a substantial risk of serious physical harm to the child.'" Id. at ¶ 10. We found that the record was devoid of any evidence that the child suffered acute pain of such duration that resulted in substantial suffering, or that the pain lasted for an extended period of time or was intractable. Id. at ¶ 12.
 {¶ 24} The trial court in the instant matter had the benefit of photographs of K.B's bruised body, Dr. Luxmore's sworn affidavit, and K.B.'s medical records, which indicated that K.B. had bruising on her face, neck, back, arms, and buttocks. The trial court, therefore, had competent credible evidence from which to conclude that K.B. suffered serious physical harm pursuant to R.C. 2901.01(A)(5)(e), and thus was an endangered child pursuant to R.C. 2919.22 and an abused child pursuant to R.C. 2151.031. See State v. Burdine-Justice (1998), 125 Ohio App.3d 707,715, appeal not allowed (1998), 82 Ohio St.3d 1483 (concluding that evidence of "profuse bruising across [the] buttocks" constituted serious physical harm). Consequently, because the state established by clear and convincing evidence that the spanking administered in Appellant's home created a substantial risk of serious physical harm, the trial court did not err when it adjudicated K.B. abused. Accordingly, Appellant's assignments of error lack merit.
 III {¶ 25} Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
Baird, P.J. and Batchelder, J. concur.
[1] R.C. 2151.35(A)(1) provides, in pertinent part: "If the court at the adjudicatory hearing finds from clear and convincing evidence that the child is an abused, neglected, or dependent child, the court shall proceed, in accordance with division (B) of this section, to hold a dispositional hearing and hear the evidence as to the proper disposition to be made under [R.C. 2151.353]."
[2] In a magistrate's order, dated July 15, 2002, the parties stipulated that the bruise on K.B.'s buttocks was approximately five to seven days old.