The STATE of Ohio, Appellee,

v.

GRIFFIN, Appellant.

[Cite as *State v. Griffin,* 150 Ohio App.3d 360, 2002-Ohio-6560.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–425.

Decided Dec. 3, 2002.

Ron O'Brien, Franklin County Prosecuting Attorney, and Joyce S. Anderson, Assistant Prosecuting Attorney, for appellee.

David A. Belinky, for appellant.

---

BROWN, Judge.

{¶ 1} Richard L. Griffin, defendant-appellant, appeals from the March 20, 2002 judgment of the Franklin County Court of Common Pleas, wherein the court journalized a jury verdict finding appellant guilty of disrupting a public service, in violation of R.C. 2909.04, a fourth-degree felony.

{¶ 2} On November 16, 2001, in Columbus, Ohio, appellant missed the No. 8 COTA bus, which belongs to a fleet that engages in public transportation. Dale Treweek, the driver of the next COTA bus, No. 3, observed appellant and recognized that he had missed his bus. Treweek stopped at the bus stop as designated by his route plan, and appellant approached the bus. Before boarding the bus, appellant asked Treweek if the No. 3 bus could "catch" the No. 8 bus. Treweek told appellant that he could not do such a thing because it would force him to leave his proscribed route. Appellant then boarded the No. 3 bus, and the bus departed. Appellant refused to pay his fare and began verbally harassing Treweek, demanding that he be let off the bus. Treweek told appellant that it

was against company policy to let a passenger off in the middle of the street. Appellant then began threatening Treweek. At the intersection of Spring and High Streets, Treweek stopped to make a turn and waited for traffic to pass. Gloria Webb, a passenger seated in the first row of the bus, testified that appellant then threatened to "smack" Treweek in the face. Treweek again told appellant he was following company policy, after which appellant spit in his face.

{¶ 3} Treweek contacted the police via an emergency phone on the bus, during which appellant continued to yell at Treweek and Webb, insisting that she tell Treweek to let him off the bus. Appellant then struck Treweek. Treweek got up from his driver's seat, and a physical confrontation ensued, which continued several rows down the bus aisle. Although Treweek believed he had engaged the brake on the bus, he had not, and the bus began moving across the intersection. Treweek attempted to reach across the driver's seat and control the bus, but appellant stopped him. Several witnesses indicated that they did not recall seeing appellant place his hands upon the steering wheel, while one witness on the street testified that appellant placed his hands upon the wheel and Treweek's hands.

{¶ 4} The bus eventually struck the curb, rolled onto the sidewalk, and struck several objects, including a street lamp, a tree, and some potted flowers. Treweek finally was able to apply the brake, after which he locked the doors pursuant to company policy. Appellant then began to pound on the doors, demanding to be let off the bus. Believing that there may be live electrical wires on the ground, Treweek declined to let any passengers leave the bus. Police finally arrived and appellant was arrested.

{¶ 5} On March 19, 2002, appellant was found guilty of disrupting a public service, in violation of R.C. 2909.04, a fourth-degree felony. Five other counts were dismissed by the court pursuant to Crim.R. 29. A sentencing hearing was held, and the court sentenced appellant to eighteen months' incarceration. Appellant appeals from the judgment of the trial court, asserting the following assignment of error:

{¶ 6} "The trial court erred in finding that the state proved beyond a reasonable doubt that appellant purposely interrupted or impaired public transportation pursuant to Ohio Revised Code § 2909.04(A)(4) [sic]."

{¶ 7} Appellant argues in his sole assignment of error that the trial court erred in finding that the state proved beyond a reasonable doubt that he acted purposely in interrupting or impairing public transportation. Appellant's argument is essentially that there was insufficient evidence to support the verdict and that the verdict was against the manifest weight of the evidence. In *State v. Jenks* (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made.

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. Id. at paragraph two of the syllabus. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.

{¶ 8} The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. *State v. Gray* (Mar. 28, 2000), Franklin App. No. 99AP–666. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the factfinder's resolution of the conflicting testimony. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. Determining whether a criminal conviction is against the manifest weight of the evidence "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction." *State v. Getsy* (1998), 84 Ohio St.3d 180, 193, 702 N.E.2d 866.

{¶ 9} In a manifest-weight-of-the-evidence review, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins,* supra. " 'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " Id. at 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. "The weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact." *State v. Burdine–Justice* (1998), 125 Ohio App.3d 707, 716, 709 N.E.2d 551. The trier of fact has the benefit of seeing and hearing the witnesses testify and is in the best position to determine the facts of the case. *In re Good* (1997), 118 Ohio App.3d 371, 377, 692 N.E.2d 1072.

{¶ 10} R.C. 2909.04(A)(2) provides:

{¶ 11} "(A) No person, purposely by any means or knowingly by damaging or tampering with any property, shall do any of the following:

{¶ 12} "* * *

{¶ 13} "(2) Interrupt or impair public transportation[.]"

{¶ 14}  Appellant argues that the state did not prove beyond a reasonable doubt that appellant purposefully disrupted public transportation.  Based on our review of the record sub judice, the prosecution presented sufficient evidence from which the trial court could reasonably conclude appellant purposely interrupted or impaired public transportation.  The trial court defined "purposely" as follows:

{¶ 15}  "Purpose, a person acts purposely when it is his specific intention to cause a certain result.  Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result or in engaging in specific conduct.  To do an act purposely is to do it intentionally and not accidentally.  Purpose and intent mean the same thing.

{¶ 16}  "Now, the purpose with which a person does an act is known only to himself unless he expresses it to others or indicates it by his conduct.  Since you cannot look into the mind of another, purpose is determined from the means used, the manner in which it was done and all the facts and circumstances in evidence."

{¶ 17}  Despite appellant's claim to the contrary, the state was not required to prove that he intended to crash the bus.  The state needed only to prove that appellant purposely interrupted or impaired public transportation.  Treweek, the bus driver, testified that when he would not let appellant off the bus in the middle of traffic, appellant started making threats and calling him names, using racist rhetoric.  Appellant threatened to beat him up and "cut" him.  Treweek stated that when he attempted to turn left at Spring and High Streets, appellant either grabbed or punched him.  He said he did not leave his driver's seat intentionally but did so because he was trying to defend himself.  Treweek testified that they ended up wrestling on the floor, as the bus left the roadway and struck several objects on the side of the road.  After they stopped wrestling, appellant got up and banged on the bus doors trying to get out until the police finally arrived.

{¶ 18}  Webb, a passenger on the bus, testified that when Treweek refused to let appellant off the bus, appellant threatened to punch or smack Treweek in the face.  After appellant repeated the threat and Treweek turned away from him, appellant spit in his face.  She testified that Treweek started to reach for the phone, and appellant said, "Oh you going to call the police on me?"  Appellant then asked her to tell Treweek to let him off, to which she replied that Treweek could not.  Webb testified that appellant continued cursing at Treweek and then punched or smacked him in the face.  She stated that Treweek got out of his seat and the two began fighting.  She said she got up from her seat and tried to pull appellant off of Treweek, telling him to let Treweek stop the bus, but appellant continued to lunge at Treweek and pull him back.  She said that after the bus stopped, appellant tried to get out a window but was unsuccessful.

{¶ 19}  Larry Daniels, a cab driver who was walking outside his cab toward Spring and High Streets, testified that he saw appellant and the bus driver both standing in the driver's area of the bus.  The driver's hands were on the steering wheel trying to keep it straight, and appellant's hands were also on the steering wheel struggling with the driver.  He said there were bright lights illuminating the scene, but he was certain both men had their hands on the steering wheel.

{¶ 20}  Construing all of this evidence in a light most favorable to the state, as we are required to do in a sufficiency-of-the-evidence analysis, we find that there was sufficient evidence that appellant purposely engaged in a confrontation with Treweek and prevented Treweek from controlling the vehicle, which interrupted and impaired public transportation.  The testimony of Treweek and Webb indicated that appellant struck Treweek while he was trying to operate the bus.  Treweek and Webb also testified that appellant struck Treweek after demanding several times that Treweek stop the bus to let him off.  Webb further stated that she tried to pull appellant off Treweek and specifically told appellant to let Treweek operate the bus, but appellant pulled Treweek away from the steering wheel and brake.  Further, Daniels testified that he had a clear view of the bus and saw appellant's hands on the steering wheel trying to steer against Treweek.  Even though Daniel's testimony conflicts with that of Treweek and Webb with regard to whether appellant ever had his hands on the steering wheel, we must construe his testimony in a light most favorable to the prosecution in a sufficiency-of-the-evidence argument.  Viewing all of the evidence and the surrounding circumstances in favor of the state, we find that there was sufficient evidence that appellant acted purposely in engaging in a physical confrontation with Treweek in order to disrupt his ability to operate the bus and impair public transportation.  Any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

{¶ 21}  With regard to the manifest weight of the evidence, appellant presented no witnesses.  The only evidence to weigh, therefore, is the testimony of the state's witnesses.  The testimony of Daniels that appellant had his hands on the steering wheel is essentially the only evidence that is in conflict.  Treweek testified that he did not know whether appellant ever put his hands on the steering wheel, and Webb did not testify that appellant had his hands on the wheel.  Although appellant points out that the trial court expressed serious doubt as to whether Daniels could have seen this from his angle and view from the street, the trial court's opinion is irrelevant to our manifest-weight-of-the-evidence analysis.  The weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact, which was the jury in this case.  The jury was in the better position to weigh the credibility of Daniels and could have found him credible.

{¶ 22} However, even if we were to find Daniels's testimony that appellant had his hands on the steering wheel not credible, that testimony was not absolutely essential to a finding of guilt. The remaining testimony from Treweek and Webb attained the high degree of probative force and certainty required for a criminal conviction. There was no evidence contesting that appellant struck Treweek while he was trying to drive the bus. Both Webb and Treweek testified that appellant wanted off the bus, got angry when he could not get off the bus, and then struck the driver. Treweek indicated that he was forced to leave his seat to defend himself. That appellant pulled him from his seat was not a requirement, given that merely striking a driver of a bus while he is driving is certain to result in disruption of public transportation. Webb further testified that, despite her pleas, appellant would not allow Treweek to return to the driver's seat to control the bus after the fight ensued. That testimony demonstrates that appellant purposely prevented the driver from operating the bus. Appellant's argument that "all he was trying to do" was get off the bus is disingenuous. While we agree that he may have been trying to get off the bus, R.C. 2909.04(A)(2) prohibits impairing or interrupting public transportation by striking and wrestling a bus driver to accomplish that goal.

{¶ 23} After reviewing the entire record and weighing the evidence and all reasonable inferences, including testimony of witnesses, we find that the jury did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The finding that appellant purposely interrupted or impaired public transportation by striking Treweek and not allowing him to control the bus was not against the manifest weight of the evidence.

{¶ 24} Accordingly, we overrule appellant's single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

PETREE and DESHLER, JJ., concur.