OPINION
{¶ 1} Defendant-appellant, Jason Estes, appeals his convictions in the Preble County Court of Common Pleas for rape, felonious sexual penetration, and gross sexual imposition. We affirm the decision of the trial court.
 {¶ 2} Between March 10, 1992 and July 1, 1996, two of appellant's young female cousins would visit his house to see the pool he was building in his yard. During the years in question, A.M. and S.S. were approximately six to ten years old. During this time period, appellant was approximately 19 to 23 years old.
 {¶ 3} In December of 2000, A.M. told her mother that on several occasions while she was visiting appellant he had sexual contact with her in his bedroom. A.M. also told her mother that appellant had sexual contact with her in her own bedroom when he was visiting her. S.S. also told her aunt, A.M.'s mother, that appellant had sexual contact with her.
 {¶ 4} The incidents were reported to the Preble County Sheriff's office. Officers came to appellant's residence and asked to interview him. Appellant voluntarily arrived at the Sheriff's office. Appellant was advised of the allegations against him and he was read his rights. Appellant gave a statement to officers wherein he admitted to sexual contact with A.M. and S.S.
 {¶ 5} Appellant was indicted for seven counts of rape, one count of felonious sexual penetration and two counts of gross sexual imposition. Appellant plead not guilty to the charges. A jury trial was held and the jury found him guilty on all counts. Appellant was sentenced to a term of 14 to 50 years. Appellant appeals the decision raising two assignments of error.
 Assignment of Error No. 1: {¶ 6} "Jason Estes' convictions for rape, felonious sexual penetration, and gross sexual imposition were against the manifest weight of the evidence, thereby denying him due process of the law."
 {¶ 7} When reviewing a manifest weight of the evidence claim, an appellate court must examine the evidence presented, including all reasonable inferences that can be drawn from it, and consider the credibility of the witnesses to determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the decision must be reversed and a new trial ordered. State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52. It must be remembered, however, that the weight to be given the evidence presented and the credibility of the witnesses are primarily matters for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The trier of fact's decision is owed deference since the trier of fact is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."State v. Swartsell, Butler App. No. CA2002-06-151, 2003-Ohio-4450, at ¶ 34, citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. State v. Shahan, Stark App. No. 2002 CA 00163, 2003-Ohio-852, at ¶ 24, citing C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279.
 {¶ 8} Appellant was convicted of rape, gross sexual imposition and felonious sexual penetration. Rape, is defined by R.C. 2907.02(A)(1)(b) which states, "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the person."
 {¶ 9} Gross sexual imposition is defined by R.C. 2907.05(A)(4) which states, "[n]o person shall have sexual contact with another, not the spouse of the offender; * * * or cause two or more other persons to have sexual contact when * * * [t]he other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
 {¶ 10} Felonious sexual penetration is defined by R.C.2907.12(A)(1)(b) which states, "No person, without privilege to do so, shall insert any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when * * * [t]he other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
 {¶ 11} As a result of the investigation into A.M. and S.S.'s allegations, Detective Clayton Van Winkle of the Preble County Sheriff's office came to appellant's residence and asked to interview him. Appellant voluntarily went to the sheriff's office. Appellant was advised of the allegations and read his rights. Appellant stated that he understood his right to remain silent, that he was not required to make a statement and that he had the right to be represented by a lawyer during the questioning. Appellant voluntarily gave a statement wherein he admitted to "a total of six times with [A.M.]." The six incidents appellant refers to consisted of "twice * * * she put her mouth on [his] penis" and "four times that [he] licked her vagina." Appellant also admitted to sticking "the tip of" one of his fingers into [A.M.]'s vagina, "per her request." When appellant was asked, "did you lick [S.S.'s vagina] at some point," he replied, "I did once."
 {¶ 12} During trial, A.M. testified that on several occasions, when she was between the ages of six and ten years old, appellant would "put his mouth on [her] privates and start licking." A.M. also testified that during these occasions, appellant would tell her to touch his penis with her hands and mouth. Furthermore, S.S. also testified that appellant "put his mouth on [her] privates."
 {¶ 13} However, at trial appellant argued that A.M. and S.S. fabricated the story because there were always several adults present when A.M. and S.S. were visiting him. Appellant also maintains that there was no lock on his bedroom door and, as a result, he never closed his bedroom door. Furthermore, appellant argues that even if the bedroom door was closed, the 125-gallon fish tank built into the wall between his bedroom and the living room allows 90 percent of his bedroom to be viewed from the living room. Therefore, appellant argues the sexual contact could not have happened and appellant denied any sexual contact with A.M. and S.M. Furthermore, appellant argued that the detectives coerced his confession.
 {¶ 14} After reviewing the entire record, weighing the evidence and all inferences, considering the credibility of the witnesses, we find that the trier of fact did not clearly lose its way and create such a manifest miscarriage of justice that the decision must be reversed. Therefore, the first assignment of error is overruled.
 Assignment of Error No. 2: {¶ 15} "The trial court erred in ordering Jason Estes to pay court appointed attorney's fees and court costs when he was indigent and without making an affirmative determination on the record of his ability to pay."
 {¶ 16} Appellant argues that the trial court assessed him with court-appointed attorney fees and court costs without determining his ability to pay. Appellant argues that based upon his indigency, he cannot pay the fees and costs.
 {¶ 17} The trial court ordered appellant to "pay all court costs in this case together with the costs of his appointed counsel." This court has previously held that R.C. 2947.23 does not require a trial court to consider a defendant's ability to pay the costs of prosecution. See State v. Rivera Carrillo, Butler App. No. CA2001-03-054, 2002-Ohio-1013. Costs of prosecution are not considered punishment. SeeSymons v. Eichelberger (1924), 110 Ohio St. 224, 238. In fact, R.C. 2947.23
mandates that the judge "shall include in the sentence the costs of prosecution and render a judgment against the defendant for such costs." Thus, the trial court did not err by ordering appellant to pay the costs of prosecution without considering his ability to pay.
 {¶ 18} Appellant was also ordered to pay his court-appointed attorney fees. Appellant argues that the trial court assessed him with court-appointed attorney fees without determining his ability to pay. R.C. 2941.51 governs the payment of appointed counsel, which appellant received. R.C. 2941.51(D) provides, in relevant part: "The fees and expenses approved by the court under this section shall not be taxed as part of the costs and shall be paid by the county. However, if the person represented has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to the person, the person shall pay the county in an amount that the person reasonably can be expected to pay." Thus, an indigent defendant may properly be required to pay his attorney fees only after the court makes an affirmative determination on the record that the defendant has, or reasonably may be expected to have, the means to pay all or some part of the cost of the legal services rendered to him. See State v. Cooper, 147 Ohio App.3d 116,2002-Ohio-617, at ¶ 71.
 {¶ 19} In this case, the trial court asked appellant if he owned an interest in any real estate. Appellant informed the court that he owned a house. Furthermore, appellant informed the court that it was his intention to sell the house as soon as possible. Appellant estimated the equity in his house at nearly $30,000. The trial court noted that while appellant was currently unemployed because he is in custody, he had been gainfully employed his entire adult life. Accordingly, the record reveals that the trial court considered whether appellant has or reasonably may be expected to have the means to pay all or part of the costs of the legal services rendered to him. We find the requirements of R.C. 2941.51(D) have been satisfied. See State v. Dunaway, Butler App. No. CA2001-12-280, 2003-Ohio-1062, at ¶ 40. Therefore, appellant's second assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and HENDRICKSON, J., concur.
Hendrickson, J., retired, of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.