[Cite as *State v. Cunningham*, 2017-Ohio-4363.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2016-04-083 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N<br>6/19/2017 |
| - vs - | : | |
| | : | |
| PHILLIP CUNNINGHAM, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2015-08-1217

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael Greer, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Scott N. Blauvelt, 315 S. Monument Avenue, Hamilton, Ohio 45011, for defendant-appellant

**S. POWELL, J.**

{¶ 1}  Defendant-appellant, Phillip Cunningham, appeals his convictions in the Butler County Court of Common Pleas for one count of murder and one count of endangering children.  For the reasons outlined below, we affirm in part, reverse in part, and remand for further proceedings.

{¶ 2}  On September 2, 2015, a Butler County grand jury indicted Cunningham with one count of endangering children in violation of R.C. 2919.22(B)(1), a second-degree felony

under R.C. 2919.22(E)(2)(d), and one count of murder in violation of R.C. 2903.02(B), an unclassified felony. The charges stemmed from allegations that Cunningham shook his two-month-old daughter ("the victim"), causing her to suffer traumatic and fatal brain injuries. The endangering children charge was the predicate offense of the murder charge.

{¶ 3} At Cunningham's jury trial, the state's evidence showed that on July 20, 2015, Cunningham was watching his son and the victim at Cunningham's parents' home in Hamilton, Ohio. Cunningham's wife was away at work. Cunningham's parents were at the home.

{¶ 4} At approximately 4:30 p.m., emergency responders arrived at the home in response to Cunningham's mother's 9-1-1 call reporting that the victim was not breathing. Responders took the victim to a nearby hospital where she was then transported to Cincinnati Children's Hospital by helicopter.

{¶ 5} The victim never resumed breathing on her own. Medical staff intubated her to provide oxygen. A CT scan revealed significant brain injuries. The victim passed away from her injuries. Medical professionals pronounced her dead on July 22, 2015.

{¶ 6} Cunningham's wife testified that Cunningham called her at work and, without providing context, said that the victim "just died in the swing."[1] On the car ride to the hospital, Cunningham told his wife he did not know what happened to the victim. Cunningham denied knowledge of accidents, falls, or head trauma to the treating pediatrician at the children's hospital.

{¶ 7} A Hamilton police detective spoke with Cunningham at the hospital. Cunningham denied any knowledge of what caused the victim's injuries. The detective spoke with Cunningham again the next day. Again, Cunningham denied any knowledge of how the

---

1. The "swing" referred to the victim's baby swing.

victim was injured. The following day, Cunningham told detectives that he thought his mother may have caused the victim's injuries.

{¶ 8} Detectives spoke with Cunningham again several days later. Cunningham said that his mother told him a babysitter dropped the victim a week before the incident. Cunningham also said that his mother admitted that she dropped the victim earlier on the day of the incident while he was away from the home.

{¶ 9} Eventually, Cunningham admitted to detectives that he dropped the victim. Cunningham said he was holding the victim and she went backwards and fell out of his arms and onto the crown of her head. Cunningham denied shaking or throwing the victim.

{¶ 10} Two days later, detectives interviewed Cunningham once more. The detectives videotaped the interview, which was later played for the jury. In the video, Cunningham admitted to detectives that he would get frustrated sometimes and would "snap." He confessed to dropping the victim and then becoming frustrated when she would not stop crying. He shook her "to the point where she shut up." Cunningham estimated he shook the victim with about half his strength for ninety seconds. He demonstrated on a stuffed animal how he shook the victim. Cunningham acknowledged that the victim's injuries were caused by shaking.

{¶ 11} The state introduced factual and expert opinion testimony from several medical doctors involved in the victim's care and the post-mortem investigation. Their testimony revealed that the victim suffered blunt impacts to her head, which caused fractures in her skull. The doctors could not opine when the fractures occurred and there was some indication that one of the fractures may have been from an earlier injury. There was also bleeding deep within the victim's brain. Doctors opined that this was caused by significant acceleration and deceleration of the victim's head relative to her neck. The brain injuries were so traumatic that they caused the victim to die.

{¶ 12} The doctors agreed that the victim's injuries were the result of non-accidental trauma. The doctors further agreed that substantial force would be required to cause the victim's fatal brain injuries and that the injuries were not consistent with a fall from chest height onto the crown of the victim's head. The pathologist who performed the autopsy opined that the manner of death was homicide.

{¶ 13} A jury returned guilty verdicts on both counts of the indictment. The trial court merged the endangering children count with the murder count. The court sentenced Cunningham on the murder count to fifteen years to life in prison. Cunningham assigns five errors for our review.

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR ENDANGERING CHILDREN, AND THE VERDICT ON THIS COUNT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 16} Assignment of Error No. 2:

{¶ 17} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR MURDER, AND THE VERDICT ON THIS COUNT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 18} In his first and second assignments of error, Cunningham argues his convictions for murder and the predicate offense of endangering children were not supported by sufficient evidence and were otherwise against the manifest weight of the evidence. Specifically, Cunningham argues that the evidence was insufficient to establish that his conduct resulted in the injuries suffered by the victim. Cunningham also argues that the evidence failed to establish that he acted recklessly.

{¶ 19} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed,

would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In other words, "the test for sufficiency requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. When evaluating the sufficiency of the evidence, this court must view all evidence in the light most favorable to the state and "defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132.

{¶ 20} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 43.

{¶ 21} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus. Nevertheless, although the two concepts are different, a finding that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. Therefore, "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

### Murder in Violation of R.C. 2903.02(B)

{¶ 22} The jury convicted Cunningham of murder in violation of R.C. 2903.02(B), an unclassified felony. Under that statute, no person shall cause the death of another "as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 [voluntary manslaughter] or 2903.04 [involuntary manslaughter] of the Revised Code." Pursuant to R.C.2919.22(E)(2)(d) and R.C. 2901.01(A)(9)(a), endangering children in violation of R.C. 2919.22(B)(1) is a second-degree felony and is considered an "offense of violence" that may serve as a predicate offense for murder in violation of R.C. 2903.02(B). The predicate offense for Cunningham's murder charge was the offense of second-degree felony endangering children. Therefore, the state was required to prove beyond a reasonable doubt that Cunningham committed the offense of second-degree felony endangering children.

### Endangering Children in Violation of R.C. 2919.22(B)(1)

{¶ 23} Endangering children in violation of R.C. 2919.22(B)(1) as charged as a second-degree felony under R.C. 2919.22(E)(2)(d), provides that no person shall "abuse" a

child, thereby causing the child to suffer "serious physical harm." The word "abuse" is not defined by the criminal statutes. *State v. Litton*, 12th Dist. Preble No. CA2016-04-005, 2016-Ohio-7913, ¶ 22, citing *State v. Hickman*, 8th Dist. Cuyahoga No. 99442, 2013-Ohio-4192, ¶ 19. However, as relevant here, the term "child abuse" has been defined as "'an act which inflicts serious physical harm or creates a substantial risk of serious harm to the physical health or safety of the child.'" *State v. Haley*, 12th Dist. Butler No. CA2012-10-211, 2013-Ohio-4123, ¶ 10, quoting *State v. Burdine-Justice*, 125 Ohio App.3d 707, 714 (12th Dist.1998). The term "child abuse" has also been described as "'any form of cruelty to a child's physical, moral or mental well-being.'" *State v. Cooper*, 147 Ohio App.3d 116, 122, 2002-Ohio-617 (12th Dist.), quoting *State v. Ivey*, 98 Ohio App.3d 249, 258 (8th Dist.1994). Serious physical harm includes "[a]ny physical harm that carries a substantial risk of death." R.C. 2901.01(A)(5)(b).

{¶ 24} The victim's mother testified that on July 19, 2015 – the day before the shaking incident – the victim was healthy and "acting fine." She was making noises, eating, and filling her diaper. The victim had a bruise on her eyebrow from where her cousin had hit her with a "sweeper." Cunningham's mother testified that she saw no injuries or anything unusual in her interactions with the victim at her home earlier on July 20.

{¶ 25} In his videotaped interview, Cunningham admitted that he dropped the victim. Angered because she would not stop crying, Cunningham picked her up, held her up in front of him, and then shook her with half his strength for 90 seconds until she stopped crying. He demonstrated the force with which he shook the baby and it was clear that the force was significant.

{¶ 26} Having suffered a traumatic and complete brain injury from being shook, the victim stopped breathing. She never resumed breathing on her own. The victim suffered hemorrhaging deep within her brain, which doctors opined was consistent with a significant

event of acceleration and deceleration of the head relative to the neck. This event led to a complete injury of the brain and, ultimately, death. This evidence demonstrates that Cunningham's convictions for child endangering under R.C. 2919.22(B)(1) and murder under R.C. 2903.02(B) were supported by the manifest weight of the evidence and that the jury did not lose its way in convicting him.

{¶ 27} With respect to Cunningham's argument alleging that the state failed to prove he acted recklessly, the culpable mental state for endangering children in violation of R.C. 2919.22(B)(1) is that of recklessness. *State v. Tompkins*, 12th Dist. Butler No. CA2014-07-159, 2015-Ohio-2316, ¶ 13; *State v. Adams*, 62 Ohio St.2d 151 (1980), paragraph one of the syllabus. R.C. 2901.22(C) defines the culpable mental state of recklessness:

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶ 28} Cunningham admitted that he would get angry and "snap" and agreed with investigators that the sound of a baby crying is one of the "most annoying sounds in the world." He said the victim was crying and would not stop so he shook the victim with half his strength for at least ninety seconds until "the point where she shut up." Cunningham conceded that shaking the victim caused her injuries. Finally, Cunningham immediately began to lie to his wife, the treating physician, and police about whether he was aware of what happened to his child. This was evidence upon which the jurors could readily conclude that Cunningham acted with heedless indifference towards the victim's well-being in shaking her so that she would be quiet. The jury did not lose its way in this regard.

{¶ 29} Cunningham also argues there was some evidence at trial indicating that the

victim suffered earlier injuries, including a skull fracture that may have been in the healing stages at the time of the victim's death. Doctors could not opine as to when that fracture occurred. Nonetheless, the doctors' expert opinions were clear that the deep hemorrhaging and complete brain injury suffered by the victim were not caused by a blunt impact, such as a fall. Instead, the injuries were the result of significant acceleration and deceleration of the victim's head. Cunningham's admission as to the way he shook the victim was consistent with the injuries she suffered. Accordingly, the jury did not lose its way in convicting Cunningham of murder or the predicate offense of endangering children. Our conclusion that the manifest weight of the evidence supports Cunningham's conviction is dispositive as to the issue of sufficiency on both counts. *Hart*, 2012-Ohio-1896 at ¶ 43. Cunningham's first and second assignments of error are overruled.

{¶ 30} Assignment of Error No. 3:

{¶ 31} THE TRIAL COURT ERRED IN PROVIDING JURY INSTRUCTIONS WHICH WERE INCORRECT AS A MATTER OF LAW.

{¶ 32} Cunningham argues that the court erred by improperly instructing jurors on the culpable mental state for the endangering children offense. During trial, and after the close of the state's case-in-chief, the parties discussed jury instructions. Defense counsel indicated concerns with the court's draft instruction on the endangering children offense, and specifically with respect to the instruction on the culpable mental state of "recklessly." Defense counsel asked the court to include an additional instruction defining the word "risk." "Risk" appears within the statutory definition of recklessly. And counsel noted that "risk" was defined in the comments to the Ohio Jury Instructions on "recklessly." *See* Ohio Jury Instructions, CR 417.17. The state had no objection to defense counsel's request and so the court added the requested language.

{¶ 33} The final jury instruction regarding endangering children stated:

Under Count Two of the indictment, the Defendant Phillip Cunningham is charged with endangering children. Before you can find the Defendant guilty of endangering children you must first find beyond a reasonable doubt that on or about July 20, 2015, in Butler County, Ohio, the Defendant recklessly abused a child under the age of eighteen, resulting in serious physical harm to the child involved.

The essential elements of the offense of endangering children are:

(1) That the Defendant Phillip Cunningham did;

(2) Recklessly;

(3) Abuse a child;

(4) When the child is less than eighteen (18) years of age;

(5) The abuse resulted in serious physical harm to the child;

(6) In Butler County, Ohio

A person acts recklessly when, with heedless indifference to the consequences, the person disregards *a substantial and unjustifiable risk* that the person's conduct is likely to cause a certain result or is likely to be of certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist. *Risk means a significant possibility, as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist.* [2]

---

2. **{¶ a}** Prior to March 23, 2015, the Revised Code defined recklessly as follows:

> **{¶ b}** (C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a *known risk* that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist. R.C. 2901.22(C) (1974). (Emphasis added.)

**{¶ c}** Accordingly, before the 2015 amendment, there had to be more than just a failure to perceive a dangerous risk, one had to recognize the risk. Therefore, the 2015 amendment lowered the standard of proof with respect to the culpable mental state of recklessness.

(Emphasis added.)

{¶ 34} Chapter 29 of the Revised Code defines "risk" as set forth in the instruction above. R.C. 2901.01(A)(7). "Substantial risk," however, is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). Accordingly, Cunningham's argument in this assignment of error is that the statutory definition of recklessly refers to a "substantial and unjustifiable risk" and as such the jury should have been instructed on "substantial risk," not "risk." Cunningham argues that the jury instruction prejudiced him because the state was required to prove that he disregarded a danger that had a "strong" possibility of occurring, which the legislature made clear was distinct from the lesser "significant" possibility associated with a mere "risk." Thus, Cunningham contends that the jury was permitted to convict him based on a lower standard of proof as to his mental state than the state was required to prove.

{¶ 35} The state argues that the court did not err by providing the statutory definition of risk. The state contends that the legislature was aware that it had defined the phrase "substantial risk" and purposefully chose to employ the phrase "substantial and unjustifiable risk," intentionally separating the words "substantial" and "risk." The legislature intended for the adjectives "substantial" and "unjustifiable" to modify the statutorily defined term, "risk." "Substantial" and "unjustifiable" are not defined within Revised Code Chapter 29. Therefore, the jury would use its understanding of the ordinary meaning of those adjectives to determine how they modify the statutory definition of "risk."

{¶ 36} Cunningham concedes that he failed to object to the claimed erroneous jury instruction and is limited to a review for plain error. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Adams*, 62 Ohio St.2d 151, 153 (1980). Generally,

- 11 -

a defendant is entitled to have the court instruct the jury "on all elements that must be proved to establish the crime with which he is charged, and, where specific intent or culpability is an essential element of the offense, a trial court's failure to instruct on that mental element constitutes error." *Id.* at 153. However, the court's failure to give a jury instruction does not always amount to plain error: "[o]nly by reviewing the record in each case can the probable impact of such a failure be determined, and a decision reached as to whether substantial prejudice may have been visited on the defendant, thereby resulting in a manifest miscarriage of justice." *Id.* at 154; *see also State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195.

{¶ 37} The Ohio Supreme Court has also held that plain error did not exist where a trial court gave an allegedly incorrect instruction on criminal purpose and confusing instructions as to causation and foreseeability. *State v. Campbell*, 69 Ohio St.3d 38, 48-49 (1994). The court noted that the defendant failed to object to these instructions and thus was required to demonstrate that the trial's outcome "clearly would have been different but for the alleged errors." *Id.* at 49. In its view, the court found that the challenged instructions did not "demonstrably determine" the outcome. The court noted that in addition to the allegedly incorrect or confusing instructions, the trial court gave one instruction that was a correct statement of the law. Therefore, the court concluded that it was impossible to say whether the jurors applied the correct instruction or the incorrect instructions and thus the court could not say the jury clearly would have acquitted the defendant. Finally, the court noted that there was strong evidence in the case of a specific intent to commit the crime. *Id.*

{¶ 38} This court has also applied a plain error standard of review to a claimed erroneous jury instruction. *State v. Cope*, 12th Dist. Butler No. CA2009-11-285, 2010-Ohio-6430, ¶ 61-62. In *Cope*, we concluded that the failure to include the language "against her will" in jury instructions on kidnapping did not amount to plain error. We observed that the

- 12 -

instructions contained a reference to the element of force used in restraint and that it would necessarily be implied that that the victim was held against her will. *Id.* at ¶ 61. Accordingly, this court concluded that the outcome of the trial would not clearly have been different but for the alleged error. *Id.* at ¶ 62.

{¶ 39} Based on the plain error standard of review, we conclude that it is unnecessary to resolve the question of whether the court erred in instructing the jury on "risk" instead of "substantial risk." To demonstrate plain error, Cunningham must clearly demonstrate that the jury would have concluded that the state did not prove beyond a reasonable doubt that he acted recklessly because they received this instruction:

{¶ 40} "Risk" means a significant possibility, as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist. R.C. 2901.01(A)(7).

{¶ 41} Instead of this instruction:

{¶ 42} "Substantial risk" means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist. R.C. 2901.01(A)(8).

{¶ 43} As was discussed in response to Cunningham's first and second assignments of error, the evidence overwhelmingly demonstrated that Cunningham acted recklessly in the way he chose to stop his daughter from crying. Cunningham admitted he would often get angry and frustrated and sometimes he would "snap." He became frustrated with his daughter because she would not stop crying after he dropped her on her head. In response, he shook her with half his strength for ninety second until "the point where she shut up." In addition to this evidence, it is undisputed the court properly instructed the jury on the statutory definition of "recklessly."

{¶ 44} Given these facts and the seemingly slight variations between the definitions of "risk" and "substantial risk," we cannot say the jury clearly would have acquitted Cunningham

- 13 -

had it been instructed on "substantial risk." Having thoroughly reviewed the record in this case, we conclude that Cunningham did not suffer any injustice because of the jury instruction. Consequently, Cunningham has not demonstrated plain error and this assignment of error is overruled.

{¶ 45} Assignment of Error No. 4:

{¶ 46} APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.

{¶ 47} In his fourth assignment of error, Cunningham argues he received ineffective assistance of counsel when his trial counsel requested the definition of the term "risk" be added to the jury instructions as opposed to the definition of "substantial risk." Considering our resolution of Cunningham's third assignment of error, we find no merit to Cunningham's ineffective assistance of counsel claim. Therefore, Cunningham's fourth assignment of error is overruled.

{¶ 48} Assignment of Error No. 5:

{¶ 49} APPELLANT'S SENTENCE WAS CONTRARY TO LAW.

{¶ 50} In his fifth assignment of error, Cunningham argues the trial court erred by imposing court costs in its sentencing entry when it failed to notify him that it was imposing court costs during his sentencing hearing. The state concedes that the trial court erred.

{¶ 51} In *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, the Ohio Supreme Court held that a trial court errs by imposing court costs in its sentencing entry when it failed to impose those costs in open court at the defendant's sentencing hearing. *Id.* at ¶ 22. When such an error occurs, the remedy is to remand for the limited purpose to allow the defendant to move the trial court for a waiver of payment of court costs. *Id.* at ¶ 22-23.

{¶ 52} Upon review of the record, the trial court did not impose court costs during Cunningham's sentencing hearing. Thus, as the Ohio Supreme Court stated in *Joseph*,

Cunningham suffered harm in that he was denied the opportunity to claim indigency and seek a waiver of those costs before the trial court. *Id.* This court has consistently held the same in addressing this exact issue. *See, e.g., State v. Rigsby*, 12th Dist. Butler No. CA2016-06-121, 2017-Ohio-329, ¶ 5-6; *State v. Howard*, 12th Dist. Butler No. CA2014-04-091, 2015-Ohio-158, ¶ 9; *State v. Simmonds*, 12th Dist. Clermont No. CA2011-05-038, 2012-Ohio-1479, ¶ 37. Therefore, Cunningham's fifth assignment of error is sustained and his sentence is reversed and remanded for the limited purpose of imposing court costs in accordance with the Ohio Supreme Court's holding in *Joseph*.

{¶ 53} Judgment affirmed in part, reversed in part, and remanded for further proceedings.

HENDRICKSON, P.J., and PIPER, J., concur.